J-A10019-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NICHOLAS GOOD AND DENISE GOOD | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KEVIN WILLIAMS AND STATE FARM MUTUAL INSURANCE COMPANY | : | No. 2563 EDA 2019 |
| | : | |
| APPEAL OF: NICHOLAS GOOD | : | |

Appeal from the Judgment Entered July 30, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  November Term, 2017, No. 2679

BEFORE:   BOWES, J., SHOGAN, J., and PELLEGRINI, J.[*]

DISSENTING MEMORANDUM BY BOWES, J.:      **FILED: JANUARY 25, 2021**

Despite conceded negligence and uncontroverted injuries, my distinguished colleagues justify the jury's zero dollar verdict with the observation that "not all injuries are serious enough to warrant compensation, even though there may be some pain."  Majority Memorandum at 6 (citing ***Van Kirk v. O'Toole***, 857 A.2d 183, 186 (Pa.Super. 2004)).  According to the Majority, "[t]he real test is whether the uncontroverted injuries are such that a conclusion that they are so minor that no compensation is warranted defies common sense and logic."  ***Id***. (quoting ***Van Kirk***, ***supra*** at 185).  This retrospective test was employed in ***Gold v. Rosen***, 135 A.3d 1039, 1044

_____

[*] Retired Senior Judge assigned to the Superior Court.

(Pa.Super. 2016), where the issue on appeal was whether the jury's verdict was against the weight of the evidence. However, the issue before us is not whether the verdict was against the weight of the evidence,[1] but whether there was error in the jury instructions and verdict slip that contributed to that verdict. Applying the proper standard, I believe that the trial court's inclusion of the "if any" language in its damages instruction to the jury and on the verdict slip constituted reversible error. Hence, I respectfully dissent.

In this case, negligence was conceded. Furthermore, the defense medical expert agreed with plaintiff's expert that Mr. Good sustained head and back injuries in the 2015 motor vehicle accident. The medical experts disagreed only as to the extent of the back injury attributable to the accident. Consequently, the trial court directed a verdict on causation and instructed the jury as follows:

> Now, the plaintiff has the burden of proving, proving in this case the extent of the damages caused by defendant's negligence. So in this case, the defendant, Kevin Williams, admits that he was negligent. And the defense medical expert testified that the accident caused some injury to the plaintiff, Nicholas Good. However, the defense disputes the extent of the injury caused. Therefore, the only issue you must decide is the amount of damages, **if any**, to which the plaintiff, Nicholas Good, is entitled.

N.T. Vol. 2, 3/12/19, at 87 (emphasis added).

---

[1] The Majority adopted the trial court's finding that any allegation that the verdict was against the weight of the evidence was waived, and I agree.

The verdict slip contained only one question: "State the amount of damages, **if any**, sustained by Plaintiff, Nicholas Good as a result of the accident." (emphasis added). The jury returned a damage award of zero dollars.

Mr. Williams cites **Gold**, **supra**, for the proposition that, under Pennsylvania law, "a jury is well within its rights to find factual cause, but not to award damages when there is no evidence of objective injury and such claims of injuries, pain and suffering are vigorously contested by the defense." Appellee's brief at 14. He maintains that there was no objective evidence of injury here and only subjective complaints of pain. Since the verdict did not shock the court's sense of justice, Mr. Williams contends it must be allowed to stand. **Id**. at 26.

Mr. Good counters that there was objective evidence of injury. Moreover, the "if any" language in the court's instruction and on the verdict slip implied that the jury could award zero dollars, which was inconsistent with the evidence presented at trial and the trial court's determination that, as a matter of law, Mr. Good sustained injuries that were causally related to the December 1, 2015 collision. Thus, Mr. Good's complaint is not that the verdict is against the weight of the evidence as in **Gold**. Rather, he contends that the trial court erred in instructing the jury that it could award zero dollars in damages despite conceded negligence and uncontroverted evidence of significant injury causally related to the accident.

The controversy surrounding the "if any" language appearing on the verdict slip arose on the second day of trial, after the court granted Mr. Good's motion for directed verdict as to causation. The court recognized that the directed verdict would change the issues remaining in the case, and advised counsel that it had drafted a new charge: "The defendant, Kevin Williams, admits that he was negligent and the defense medical expert testified that the accident caused some injury to plaintiff, Nicholas Good. However, the defense disputes the extent of the injury caused. Therefore, the only issue you must decide is the amount of damages to which the plaintiff, Nicholas Good, is entitled." N.T. Trial Vol. 2, 3/12/19, at 34-35. The court noted further that the verdict sheet would change, "simply stating the amount of damages, if any --- well, we can take out the[`]if any.[']  The amount of the damages sustained by the plaintiff, Nicholas Good, as a result of the accident noneconomic, loss of life's pleasures, and pain and suffering." *Id*. at 35.

Defense counsel renewed his argument that a directed verdict as to causation was improper, prompting the trial court to reconsider its decision. After reviewing the authorities provided by the defense, the court reaffirmed its decision to grant a directed verdict as to causation. However, without explanation, it announced that it intended to include the "if any" language on the verdict slip. Plaintiff's counsel objected to its inclusion.[2] *Id*. at 51.

---

[2] The trial court subsequently gave a jury instruction that conformed with the modified verdict slip.

- 4 -

The issue before us is not whether the jury's verdict was against the weight of the evidence, but whether the trial court's instruction advising the jury that it was free to award no non-economic damages despite conceded negligence and causation as a matter of law constituted error. Our standard of review of such a claim is quite different than a weight claim. Our review of jury instructions is limited to determining whether the trial court committed a clear abuse of discretion or error of law which controlled the outcome of the case. *Krepps v. Snyder*, 112 A.3d 1246, 1256 (Pa.Super. 2015). Error occurs when "the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue." *Id*. (quoting *Gorman v. Costello*, 929 A.2d 1208, 1211-12 (Pa.Super. 2007) (citation omitted). In making that determination, "[w]e look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party." *Id*. (quoting *Estate of Hicks v. Dana Companies, LLC*, 984 A.2d 943, 972 (Pa.Super. 2009) (citation omitted). Error is harmless "where the jury is not required to deliberate over the issue out of which the alleged error arises in order to reach its verdict." *Boyle v. Indep. Lift Truck, Inc.*, 6 A.3d 492, 496 (Pa. 2010).

The record reveals the following. Mr. Williams' car rear-ended Mr. Good's truck, which was stopped at a light. It was undisputed that the impact pushed the truck several feet into the intersection and caused damage to the

truck's rear bumper and a light. There was no visible damage to Mr. Williams's car. The men exchanged information and neither required medical care at the scene.

Following the accident, Mr. Good suffered vertigo, headaches, and dizziness. Since he had a cold at the time, he thought the symptoms might be indicative of a sinus infection. Three days after the accident, he went to the emergency room, where an x-ray ruled out a sinus infection. Mr. Good was also experiencing low back pain, mostly on the right side, that radiated down his right leg. That pain prompted him to seek treatment at Pain Management where he received electrical stimulation and heat/cold therapy three to four times per week, which provided temporary pain relief.

Pain Management referred Mr. Good to neurologist Bruce Grossinger, D.O. for the headaches and vertigo. Dr. Grossinger conducted an IMPACT Test, which confirmed post-concussion symptoms. He administered occipital injections for the head-related symptoms, and they provided some relief. He also conducted an EMG, which objectively confirmed that radiating right-sided lower back pain was nerve-related radiculopathy at S1. Dr. Grossinger administered facet injections to Mr. Good's left lower back and six epidural injections to the right side of the lower back, a procedure called "medial branch blocks injected under fluoroscopy," that proved to be more successful. Deposition of Dr. Grossinger, 2/27/19, at 60. Seven months after the accident, in June 2016, Mr. Good's concussion symptoms were improved, his

mental status appeared better, but he was still having some headaches. His back and leg pain was greatly reduced.

Two years later, in June 2018, Mr. Good sought out treatment from Dr. Grossinger for moderate headaches, some memory loss, and pain in the lumbar spine radiating into both legs. Dr. Grossinger prescribed anti-inflammatories and his partner did two rounds of epidural injections in October and November 2018. Dr. Grossinger related these injuries to the accident, opined that they were permanent, and testified that Mr. Good would benefit from epidural injections in the future.

Walter Dearolf, M.D., an orthopedic surgeon, testified for the defense. Notably, he agreed that Mr. Good "sustained trauma causing, obviously, his vertigo and headaches that he had, and he developed low back pain as a result of the injury with sciatic symptoms." Deposition of Dr. Dearolf, 2/19/19, at 35. However, he felt the latter symptoms had resolved with treatment in June 2016. *Id*. at 53-54. Nonetheless, when he examined Mr. Good on November 1, 2018, he found "symptoms consistent with an irritated sciatic nerve on the right side" and "complaints of back pain, accompanying that with some loss of motion in his back due to spasm intermittently." *Id*. at 33. He also noted that Mr. Good had a positive sitting root test on the right leg at that time, which was consistent with an inflamed nerve root.

Dr. Dearolf reviewed an MRI of the Mr. Good's lumbar spine from August 4, 2012, and noted that it depicted a herniated disc at L5-S1, and a bulging

disc above it. He compared it with a post-accident MRI from December 29, 2015, and found it very similar, if not identical, to the earlier scan. *Id*. at 28. In Dr. Dearolf's opinion, an individual with such MRI findings would have periodic exacerbations of lower back pain, and in his view, the low back pain in 2018 would be unrelated to the accident. He concluded that Mr. Good did not require any further treatment as it related to the December 2015 accident. *Id*. at 38.

Thus, there was uncontroverted evidence that Mr. Good sustained a head injury and right-sided radiculopathy causally related to the 2015 accident. It was disputed that left–sided lumbar pain was related to the accident or that any future treatment was necessary.

Based on the foregoing, I believe the trial court erred in instructing the jury to award damages, "if any." Additionally, the verdict form impermissibly permitted the jury to reject undisputed evidence that defendant's negligence caused Mr. Good's head injury and was responsible for at least some of his back injury. The injuries were confirmed through objective testing and acknowledged by both medical experts. Mr. Good testified to the pain he suffered due to his injuries sustained in the accident, and underwent invasive treatments to alleviate the pain. Mr. Williams did not contest that Mr. Good experienced pain, although he attributed some of his pain to periodic exacerbation of a pre-existing back injury.

In my view, the uncontroverted injuries were of the type that would normally cause pain and suffering. *See Boggavarapu v. Ponist*, 542 A.2d 516, 518 (Pa. 1988) (recognizing that "there are injuries to which human experience teaches us there is accompanying pain" such as "the stretched muscle, twist of the skeletal system, injury to a nerve"). Furthermore, the injuries herein were not so insignificant or transient that one could reasonably conclude that no compensation was required. Post-concussion symptoms and right leg radiculopathy due to a nerve root injury, lasting at a minimum seven months and requiring multiple injections and therapy, are not the type of "rub of life" injuries for which the jury is free to award no damages. *See Burnhauser v. Bumberger*, 745 A.2d 1256, 1261 (Pa.Super. 2000) (finding award of no damages for pain and suffering where opposing experts agreed that victim suffered soft tissue injuries that would require up to six months to resolve was against the weight of the evidence).

Generally, in instructing a jury about damages, courts use neutral language. Juries are told that if they find liability, they should award damages that fairly compensate the plaintiff for his injury. The injection of the phrase "if any," is a departure from that even-handed approach and may be perceived as a suggestion that no damages should be awarded. Where, as here, there is uncontroverted evidence of injury, the qualification constitutes error.

On the record before us, I believe the jury should have been instructed to award damages for the uncontroverted injuries, as well as any additional

injuries it concluded were accident-related. Such an instruction is consistent with Pa.S.S.J.I. (Civ.) 7.50, which applies to situations such as this one where negligence is conceded and medical experts agree that the defendant's negligence caused harm to plaintiff:

> The parties agree that *[name of defendant]* was negligent and [the parties] [medical experts] [other experts] agree that the negligence caused harm to *[name of plaintiff]*.
>
> You must answer "yes" on the [verdict sheet] [jury interrogatory] to question # 1 [(whether *[name of defendant]* was negligent)] and question # 2 [(whether *[name of defendant]*'s negligence was the "factual cause" of harm to *[name of plaintiff]*)].
>
> **You must award damages for the [uncontested] [agreed-upon] harm *[specify damages--e.g., medical bills, lost wages, pain and suffering, etc.]*.**
>
> **The parties disagree, however, on the extent of *[name of plaintiff]*'s harm caused by *[name of defendant]*'s negligence.**
>
> **You must decide the extent of the harm *[name of defendant]*'s negligence caused and return a verdict that fully compensates *[name of plaintiff]* for all harm sustained.**

Pa.S.S.J.I. (Civ.) 7.50.[3] (emphasis added). The Subcommittee Note to the suggested instruction points out that "[t]he second paragraph of the charge

---

[3] The trial court was not required to read verbatim Pa.S.S.J.I. (Civ.) 7.50. As this Court has often noted, "there is no right to have any particular form of instruction given; it is enough that the charge clearly and accurately explains the relevant law." ***Krepps v. Snyder***, 112 A.3d 1246, 1256 (Pa.Super. 2015) (quoting ***Commonwealth v. Alvin***, 516 A.2d 376, 381 (Pa.Super. 1986) (citation omitted).

recognizes that judges have discretion to either instruct the jury to answer questions number 1 and 2 "yes" or to give the jury a verdict sheet that only has the damages question." Pa.S.S.J.I. 7.50 (Civ.) Subcommittee Note.

In light of the uncontroverted evidence of significant injuries causally related to the accident, I believe the trial court erred in instructing the jury to award damages "if any." Hence, I would vacate the judgment and remand for a new trial limited to the issue of damages.[4]

---

[4] I recognize that evidence concerning the nature and severity of the accident may be relevant to the issue of damages, and I would not preclude such evidence at the new trial limited to damages. **See Fischer v. Troiano**, 768 A.2d 1126, 1132 (Pa.Super. 2001) (acknowledging the relevance of evidence regarding the nature of accident to the issue of damages and permitting its introduction at a new trial as to damages only).